**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **TERRENCE THOMAS,** | **:** | |
| | **:** | |
| **Plaintiff** | **:** | |
| | **:** | |
| **v.** | **:** | **5:05-CV-440 (CAR)** |
| | **:** | |
| **TRANE, A BUSINESS OF AMERICAN** | **:** | |
| **STANDARD, INC.,** | **:** | |
| | **:** | |
| **Defendant** | **:** | |

<u>ORDER ON MOTION FOR SUMMARY JUDGMENT</u>

Before the Court is Defendants Motion for Summary Judgment (Doc. 18) in which Defendant argues it is entitled to summary judgment as a matter of law as to all of Plaintiff's ADA claims.  For the following reasons, Defendant's Motion is **GRANTED**.

## I. FACTS AND PROCEDURAL HISTORY

This action arises out of the termination of Plaintiff Terrance Thomas by Defendant Trane allegedly because Plaintiff was frequently absent due to his medical condition.  Construing the evidence in the light most favorable to Plaintiff as the non-moving party, the Court finds as follows.

### A. Plaintiff's Medical Condition

Plaintiff was originally diagnosed with both asthma and lymphoma in early 2003. (Thomas Dep. 20, July 11, 2006.)  After receiving chemotherapy, Plaintiff underwent a stem cell transplant, which left his immune system abnormally susceptible to infections.  (Thomas Dep 82, Ex. 9.)  As a result of his condition, Plaintiff states he had trouble breathing and in turn "laid around because [he] didn't feel like walking or whatever, because it took away a lot of energy."

1

(Thomas Dep. 101.)  In addition, Plaintiff was frequently observed coughing by other employees, complained of difficulty breathing, and regularly used his inhaler.  (Mosley Dep. 4, Aug. 21, 2006; Traylor Dep. 4, Aug. 21, 2006. )

### B. Plaintiff's Attendance at Work

Due to Plaintiff's medical condition, Plaintiff frequently missed work.  Plaintiff was absent from work from April 28, 2003 through May 5, 2003 due to respiratory problems and from May 9, 2003 through May 30, 2003 for surgery.  (Thomas Dep. 36-37, Ex. 5-6 .)  On July 15, 2003, Plaintiff's doctor, Dr. Cheryl Jones, asserted that Plaintiff had been under her care for lymphoma and chemotherapy and that he would be unable to work until at least December 31, 2003, at which time his ability to return to work would be reassessed.  (Thomas  Dep. 38-39,  Ex. 7 .)  As a result, Defendant Trane approved Plaintiff's leave of absence for this extended, five and one half months time period.  (Thomas  Dep. 38-39.)  Plaintiff also applied for and received long term disability benefits effective October 27, 2003 to undergo treatment for lymphoma.  (Thomas  Dep.  Ex. 3.)  On February 4, 2004, Plaintiff's doctor determined Plaintiff would be ready to return to work with no restrictions by April 5, 2004.  (Thomas Dep. 39-40, Ex. 9 .)

Although Plaintiff was told he would retain his prior job as a sheet metal technician, he was instead transferred to the assembly line three or four weeks after returning to work.  (Thomas Dep. 34.)  In this new position, Plaintiff worked on a rolling assembly line, installing the tops of air conditioning units.  (Bentley Aff. ¶ 6).  Because other production technicians installed the bottoms,  sides, motors, and other equipment of the units, the technicians who performed work on the line after Plaintiff  depended on Plaintiff to complete his task.  (Bentley Aff. ¶ 6).  In addition, upon returning to work Plaintiff informed Defendant's human resources

staff that there would be times when he would have to go to the doctor for follow-up treatment. (Bentley Dep. 8, Aug. 21, 2006;  Gray Dep. 27, Aug. 21, 2006; Thomas Dep. 67-68.)  He was specifically told not to use vacation time for absences due to his ongoing medical treatment. (Thomas Dep. 67-68.)  Nevertheless, Michael Bentley assured Plaintiff that those absences would not be counted against his attendance record.  (Thomas Dep. 77.)   Between June of 2004 and February of 2005, Plaintiff was absent a total of 19 working days.  (Zellner Aff. ¶ 2, Ex. 1.) Thirteen of these days were recorded as vacation, while illness was listed as the reason for the six remaining absences. (Zellner Aff. ¶ 2, Ex. 1.)

### C. Defendant's Attendance Policy

Defendant Trane promulgated a "No-Fault" Attendance Policy that is spelled out in the employee handbook:

> We utilize a "no fault" attendance policy. This means that all of your absences regardless of the reasons, are included in the calculation of your individual attendance performance. Although a doctor's statement will not excuse the absence you may be required to submit a doctor's statement if you are frequently absent from work. . . . Employees who are unsuccessful in complying with the minimum attendance performance goal of 98%, will be individually and confidentially counseled by the manager. Employees, who fail to correct an attendance problem, place their continued employment with Trane, in serious jeopardy.

(Employee Handbook 24.)  Thus, under the policy, all of an employee's absences, regardless of the reason for the absence, are included in the employee's individual attendance performance, each employee is expected to maintain an attendance performance goal of 98%, and Trane reviews employee performance goals on a frequent basis.  (Employee Handbook 24.)  Plaintiff admits he received a copy of the attendance policy and reviewed the policies in the employee handbook, including the no-fault attendance policy.  (Thomas Dep. 26-28.)  Plaintiff  also

acknowledges that he understood which absences counted against him under the attendance policy and that Trane would review his attendance record periodically. (Thomas Dep. 26-28.)

In accordance with the policy, on November 18, 2004, Trane provided Plaintiff with a warning regarding his attendance. (Zellner Aff. ¶ 3, Ex. 2; Thomas Dep. 59-60, Ex. 15.) Trane informed Plaintiff that continued absenteeism would result in further discipline up to and including termination. (Zellner Aff. ¶ 3, Ex. 2; Thomas Dep. 59-60, Ex. 15 .) Plaintiff received and signed documentation related to this warning. (Zellner Aff. ¶ 3, Ex. 2; Thomas Dep. 59-60, Ex. 15 .) On December 13, 2004, Trane provided Plaintiff with a second warning regarding his absenteeism. (Zellner Aff. ¶ 5, Ex. 4; Thomas Dep. 64-65, Ex. 17 .) That warning explained that, as of November 30, 2004, Plaintiff's year-to-date absenteeism rate was 2.4038%. The warning further explained, "you are advised that any additional absence will result in termination of your employment." (Zellner Aff. ¶ 5, Ex. 4; Thomas Dep. 64-65, Ex. 17 .)

### D. Plaintiff's Termination

On or about Tuesday, February 15, 2005, Plaintiff called and left his supervisor, Wesley Thomas Zellner, a voice mail before his shift started informing his supervisor that he had a fever, was sick, and needed to see a doctor. (Zellner Dep. 8, Aug. 21, 2006.) Mr. Zellner told Plaintiff to go take care of himself, so Plaintiff left work and went to the emergency room complaining of a fever. (Zellner Dep. 8; Thomas Dep. 16.) Plaintiff returned to work later that day with a doctor's excuse showing that he had the flu and would be out of work for the remainder of the week. (Thomas Dep. at 16; Bentley Dep. 10; Zellner Dep. 5.) Accordingly, Mr. Zellner approved twenty five hours of personal leave, which was counted against him for purposes of the time and attendance policy, for February 15-17, 2005. (Zellner Dep. 10-11.)

Following Plaintiff's unexpected absence, Human Resources Generalist Michael Bentley, Human Resources Manager Bill Bryan and Forsyth Operations Manager Bennie Gray: (1) reviewed the doctor's excuse; (2) determined that it did not qualify for a leave of absence under the FMLA because it was for less than 5 days; (3) noted Plaintiff's "final warning" status for attendance violations; and (4) decided to terminate Plaintiff for violation of the attendance policy. (Bentley Aff. ¶ 7; Bentley Dep. 10-12, 35; Gray Dep. 30.) Mr. Bentley, Mr. Zellner and Mr. Gray called Plaintiff and informed Plaintiff that he was being terminated for violating the attendance policy. (Thomas Dep. 15.) At the time of his discharge, Plaintiff had worked for Defendant for a total of five years and two months and had accumulated approximately ninety-two hours of vacation time. (Thomas Dep. 13; Bentley Dep. 23.) Although Plaintiff requested to use his accumulated vacation time when his follow up treatment necessitated his absence from work, he was not allowed to do so. (Gray Dep. 6; Thomas Dep. 31.)

Following his termination, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Thomas Dep. 10, Ex. 1.) In his EEOC charge, Plaintiff asserted he had asthma and lymphoma and alleged that if he had been given three days of vacation during the week he was terminated, he would have been able to continue working. (Thomas Dep. 10, Ex. 1.)

### E. Procedural History

On November 29, 2005, Plaintiff, a former employee of Defendant Trane, brought this suit alleging discriminatory termination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12102 - 12300 (2007) ("ADA") and a racial discrimination claim pursuant to 42 U.S.C. § 1981. After completing discovery, Defendant filed the Motion for Summary Judgment

currently before the Court arguing Plaintiff could establish neither claim. In conjunction with his response, Plaintiff filed a Stipulation of Dismissal as to Plaintiff's § 1981 claim, signed by both parties. Accordingly, Plaintiff's § 1981 claim is no longer before the Court and will not be discussed herein.

## II. ANALYSIS

### A. Summary Judgment Standard of Review

Summary Judgment is appropriate when the pleadings, depositions and affidavits show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Supreme Court has explained that the moving party's burden may be discharged "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In Celotex, the Court held that summary judgment is appropriate against

> A party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Id. at 322-23. "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact."

### B. Plaintiff's ADA Claim

To establish a prima facie case of employment discrimination under the ADA, a plaintiff must demonstrate that he (1) has a "disability," (2) is a "qualified individual," and (3) was

subjected to unlawful discrimination because of his disability.  Hilburn v. Murata Electronics North America, Inc., 181 F.3d 1220, 1226 (11th Cir. 1999) (citing 42 U.S.C. §§ 12112(a); Morisky v. Broward County, 80 F.3d 445, 447-49 (11th Cir. 1996)).  The Court finds that Plaintiff can establish neither that he has a "disability" nor that he is a "qualified individual" under the ADA.  Therefore, Defendant is entitled to summary judgment.

**1. "Disability" Under The ADA**

The ADA defines a "disability" as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such impairment; or, (C) being regarded as having such impairment.  Id. (citing 42 U.S.C. § 1202(2)).  As Plaintiff does not argue that he has a record of such impairment or that he is being regarded as having such impairment, the Court will focus on whether Plaintiff has an impairment that substantially limits a major life activity.

"Merely having an impairment does not make one disabled for purposes of the ADA." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 195 (2002) (citing 42 U.S.C. § 12102(2)(A) (1994)).  A claimant must affirmatively show that his impairment "substantially limits" a "major life activity."  Id.  The ADA defines "major life activities" as those functions that the average person in the general population can perform with little or no difficulty such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i) (2006).  The ADA also defines the term "substantially limits" as "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to

the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. §§ 1630.2(j)(1)(i), (ii) (2006). When determining whether an impairment substantially limits a major life activity, courts should consider "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2) (2006).

It is generally "insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." Id. at 198. When an individual's explanation of their alleged disability is "couched in vague terms and unaccompanied by any evidence that the described afflictions [are] any worse than is suffered by many adults," they have not shown they are in fact substantially limited in major life activities. Rossbach v. City of Miami, 371 F.3d 1354, 1359 (11th Cir. 2004) (court found plaintiffs' claims that their impairments prevented them from standing, sitting, walking or sleeping for "extended periods of time" failed to show they were substantially limited in the major life activities of walking, sitting, standing and sleeping).

Further, "[a]n individual has not shown that his or her ability is substantially limited if his or her functioning is only 'moderately below average.'" Allen v. U.S. Postmaster General, 158 Fed. Appx. 240, 242 (11th Cir. 2005) (citing Rossbach, 371 F.3d at 1358).[1] In Allen, although the evidence showed the plaintiff was unable to function in her previous position as a letter carrier, the Eleventh Circuit determined "her inability to perform this particular job [did] not

---

[1]Although Allen discusses a claim brought pursuant to the Rehabilitation Act, the case law and analysis applicable to Rehabilitation Act claims are equally applicable to ADA claims. Cash v. Smith, 231 F.3d 1301, 1305 n.2 (11th Cir. 2002) (citation omitted).

constitute a substantial limitation on her ability to work." Id. at 243. The court explained that "although [the plaintiff's] foot injuries [prevented] her from walking long distances without rests on account of pain, the record [did] not demonstrate that she was substantially limited in the major life activity of walking" as she testified "that she [could] still go to the grocery store, load groceries, care for herself and her children, and do other household chores such as laundry." Id. The court held that "[a]t best, the nature and severity of her walking and standing impairments seemed only 'moderately below average,' and there was no evidence that her problems walking and standing were any worse than suffered by many aging adults." Id.

Moreover, "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." Sutton v. United Air Lines, Inc., 527 U.S. 471, 482-83 (1999). While " a person whose physical or mental impairment is corrected by mitigating measures still has an impairment," "if the impairment is corrected it does not 'substantially limit' a major life activity." Id. at 483. See also Ramon v. AT & T Broadband, 195 Fed. Appx. 860, 867 (11th Cir. 2006) (plaintiff "failed to submit evidence sufficient to survive summary judgment that her health issues substantially limited a major life activity" and thus "failed to establish a prima facie case of disability discrimination under the ADA").

In the case at bar, Plaintiff cannot establish that he has a "disability" that is covered by the ADA. Initially, although Plaintiff has been diagnosed with both lymphoma and asthma, merely having a previous diagnosis of cancer or asthma does not make him disabled for purposes of the ADA. Further, while Plaintiff contends his previous lymphoma treatment has left him more susceptible to certain types of illnesses and he experiences breathing problems associated

with his asthma and seasonal pollen, Plaintiff acknowledges that he can walk, breathe, and work. In fact, the only problem reported by Plaintiff is that he sometimes has trouble breathing and in turn doesn't feel like walking because " it t[akes] away a lot of energy." (Thomas Dep. 101.) Plaintiff offers little more than a vague general description of his alleged disability and has failed to provide any evidence or explanation as to how his condition is any worse than is suffered by many adults. Thus, Plaintiff has shown, at most, that his ability to perform his daily activities is moderately below average. Finally, because upon returning to work Plaintiff's lymphoma was in remission and he was working under no restrictions from his physician, his condition no longer "substantially limited" his activities as it was corrected by treatment. Accordingly, Plaintiff has failed to establish that his lymphoma or asthma substantially limited his ability to breath, walk, or work. Therefore, he has not carried his burden of proving that he is "disabled" as defined by the ADA, and Defendant is entitled to summary judgment.

## 2. "Qualified Individual" Under The ADA

Under the ADA a "qualified individual with a disability" is identified as "an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m) (2006). When an individual is unable to perform the essential functions of a job without an accommodation, "the burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1286 (11th Cir. 1997)).

An accommodation request is "reasonable," only if the accommodation actually assists the employee in performing the essential functions of his job and is not an "undue hardship" on the employer. 29 C.F.R. §1630.2(o) & (p) (2006). For example, in <u>Wood v. Green</u>, 323 F.3d 1309 (11th Cir. 2003), the United States Court of Appeals for the Eleventh Circuit determined at a request for an indefinite leave of absence was not reasonable as the accommodation would not assist the plaintiff in preforming his job. <u>Id.</u> at 1314. Wood, the plaintiff, suffered from unpredictable cluster headaches that necessitated frequent absences. <u>Id.</u> The court determined that Wood's requested accommodation, indefinite leaves of absence, was unreasonable, and explained that a "reasonable accommodation is by its terms most logically construed as that which, presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." <u>Id.</u> at 1313 (citation omitted). "While a leave of absence might be a reasonable accommodation in some cases," "Wood was not requesting an accommodation that allowed him to continue work in the present, but rather, in the future - at some indefinite time." <u>Id.</u> at 1314. Therefore, because "[t]he ADA covers people who can perform the essential functions of their jobs presently or in the immediate future," the court held that Wood's requested accommodation was not reasonable. <u>Id.</u>

Furthermore, in <u>Jackson v. Veterans Administration</u>, 22 F.3d 277 (11th Cir. 1994), the Eleventh Circuit held that requiring an employer to rearrange its entire schedule at a moment's notice in order to account for a plaintiff's unpredictable impairment was not a reasonable accommodation as it placed an undue hardship on the employer. <u>Id.</u> at 280. The plaintiff, Jackson, worked as a housekeeping aide for the Veterans Administration, but was frequently absent due to his arthritis. <u>Id.</u> at 278. It was undisputed that plaintiff preformed his duties

satisfactory when he was present; however, defendant argued that, for Jackson to fully satisfy the essential requirements of the job, he had to physically be present.  Id. at 278. The court agreed and found that "[Plaintiff's] presence on a routine basis was an essential element of the job that he . . . failed to satisfy."  Id.  "Because Jackson was absent numerous times within the first few months of his probationary employment on a sporadic, unpredictable basis, he could not fulfill this essential function of his employment, that of being present on the job, and was not otherwise qualified."  Id. at 279 (citations omitted).

In response, Jackson argued that he could satisfy the presence requirement of his job with the following accommodations to his schedule: "when he received his bi-weekly treatment for arthritis, the VA could either schedule a regular off day or delay the start of his shift; and, in the event of a flare-up due to his condition, Jackson could swap off days with other employees, delay his shift start time, or defer more physically demanding and less time sensitive job duties until the next day."  Id. at 279.  In rejecting this proposed accommodation, the court explained that the  proposed accommodation did not address the unpredictable nature of Jackson's absences, which the court considered "the heart of the problem."  Id.  The court further found that there was no way to accommodate this aspect of Jackson's condition because "[r]equiring the VA to accommodate such absences would place upon the agency the burden of making last-minute provisions for Jackson's work to be done by someone else."  Id.  Because "[s]uch a requirement would place an undue hardship on the agency," the court held the defendant was entitled to prevail on summary judgment.  Id. at 279-80 (citation omitted).

In the instant case, even assuming Plaintiff could show that he has a "disability," he nevertheless cannot establish that he is a "qualified individual with a disability" within the

meaning of the ADA. It is undisputed that plaintiff is unable to perform the essential functions of his job without accommodation. Therefore, the Court's analysis will focus on whether Plaintiff's proposed accommodation is reasonable.

Plaintiff contends in his pleadings that Defendant should have allowed him to use three days of his accumulated vacation leave, rather than approved personal leave. Because the use of vacation leave is not considered when calculating an employee's attendance record, Plaintiff argues that had he been allowed to use vacation leave his attendance record would not have been adversely effected and he would have been able to adequately perform his job. Although Plaintiff seems to focus on an accommodation that would have excused the absence that immediately preceded his termination, Plaintiff was terminated due to his history of frequent and unpredictable absences, not one isolated un-excused absence. Thus, placed in the proper scope, Plaintiff's proposed accommodation is that the days he miss work due to his medical condition should not have been considered when calculating his attendance record.

First, Plaintiff's requested accommodation of indefinite periods of leaves of absence is unreasonable because, like the accommodation in Wood, Plaintiff's proposed accommodation is not an accommodation that, at the time he requested his last leave of absence, or in the near future, would have enabled him to perform the essential functions of the job in question. Although his last request was for only 3 or 4 more days, Plaintiff, by the nature of his alleged disability and the history thereof, was unable to provide an assured time period for his return to employment. Plaintiff may have been able to work within a month or two, or he could have been stricken with another case of the flu, or any other number of sicknesses according to Plaintiff, soon after his return and require another indefinite leave of absence. Therefore, Plaintiff's

requested accommodation would not have allowed him to continue working in the present, but rather, in the future at some indefinite time.

Second, like the accommodation in <u>Jackson</u>, Plaintiff's requested accommodation does not address the unpredictable nature of his absences. There is no way to accommodate this aspect of his absences and the burden that such accommodation would place on Defendant is certainly an "undue hardship." One of Defendant's managers, Benny Gray, testified that due to the nature of the business, they "need everybody there every day." (Gray Dep. 15.) <u>See</u> <u>also</u> 29 C.F.R. § 1630.2(n)(3)(i) (Evidence of whether a particular function is essential includes, but is not limited to, the employer's judgment as to which functions are essential). Gray also noted that, if Plaintiff had given them notice of when he needed time off, the company would have accommodated that need. One of Defendant's Human Resources Generalists, Michael Bentley, testified that "there would have to have been some preplanning . . . to have someone man his station while he was not there, so, you know, whatever cost is contributed to that." (Bentley Dep. 14-15.) Thus, Plaintiff's requested accommodation would make it impossible to provide coverage for his position, potentially causing the assembly line to back up, and increase overtime hours for other employees called in to fill in for Plaintiff. Accordingly, as Plaintiff's requested accommodation would not have enabled him to perform the essential functions of the job and was an "undue hardship" on his employer, Plaintiff cannot establish that he is a "qualified individual with a disability" within the meaning of the ADA.

### III. CONCLUSION

For the reasons expressed herein, Plaintiff cannot establish that he has a "disability" or that he is a "qualified individual with a disability" within the meaning of the ADA. Accordingly,

Defendant's Motion for Summary Judgment is **GRANTED**.

   **SO ORDERED**, this the 27th day of September, 2007.


     **S/ C. Ashley Royal**
     C. ASHLEY ROYAL
     United States District Judge


CF/scs/ssh